1   Laurence D. King (SBN 206423)              Frederic S. Fox (*pro hac vice* to be filed)
    Linda Fong (SBN 124232)                    David A. Straite (*pro hac vice* to be filed)
2   Mario M. Choi (SBN 243409)                 **KAPLAN FOX & KILSHEIMER LLP**
    **KAPLAN FOX & KILSHEIMER LLP**            850 Third Ave., 14th Floor
3   350 Sansome Street, Suite 400              New York, NY 10022
    San Francisco, CA 94104                    Telephone:  (212) 687-1980
4   Telephone:  (415) 772-4700                 Facsimile:  (212) 687-7714
    Facsimile:  (415) 772-4707                 *ffox@kaplanfox.com*
5   *lking@kaplanfox.com*                      *dstraite@kaplanfox.com*
    *lfong@kaplanfox.com*
6   *mchoi@kaplanfox.com*

7   Marc A. Wites (*pro hac vice* to be filed)
    **WITES & KAPETAN, P.A**.
8   4400 North Federal Highway
    Lighthouse Point, FL 33064
9   Telephone: (954) 570-8989
    Facsimile: (954) 354-0206
10  *mwites@wklawyers.com*

11  *Attorneys for Plaintiff Mark Roushion*

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15

16  MARK ROUSHION, on behalf of himself and     Case No. 15-cv-01102
    all others similarly situated,
17                                              **CLASS ACTION COMPLAINT**
                    Plaintiff,
18                                              FOR VIOLATIONS OF:
            v.
19                                                1)  MAGNUSON-MOSS WARRANTY
    NVIDIA CORPORATION and EVGA                       ACT, 15 U.S.C. §§ 2301, *et seq.*;
20  CORPORATION,                                   2)  CAL. BUS. & PROF. CODE §§ 17200,
                                                       *et seq.* (Cal. Unfair Competition Law);
21                  Defendants.                    3)  CAL. BUS. & PROF. CODE §§ 17500,
                                                       et seq. (California False Advertising
22                                                     Act);
                                                  4)  CAL. CIVIL CODE §§ 1750, *et seq.*
23                                                     (Consumer Legal Remedies Act);
                                                  5)  Breach of Express Warranty;
24                                                6)  Breach of Implied Warranty of
                                                       Merchantability;
25                                                7)  Unjust Enrichment
                                                  8)  Negligent Misrepresentation
26
                                                <u>DEMAND FOR JURY TRIAL</u>
27

28

                                                            Case No. 15-cv-01102

Plaintiff Mark Roushion ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against NVIDIA Corporation ("NVIDIA") and EVGA Corporation ("EVGA") (collectively, the "Defendants"). Plaintiff alleges pursuant to his personal knowledge as to himself and his own acts, and pursuant to the investigation of his counsel, and information and belief as to the other allegations of this Complaint.

**NATURE OF ACTION**

1. Plaintiff brings this nationwide class action on behalf of himself and all persons who purchased the NVIDIA GeForce GTX 970 graphics card (hereafter, the "GTX 970"), also known as a video card, display card, display adapter, or more informally as a graphics processing unit ("GPU").

2. A graphics card is a specialized piece of computer hardware designed to generate the creation of images for output to a display, such as a computer monitor. Graphics cards are designed to interface with a computer's other components to process (*i.e.*, render) graphics, which are then typically displayed on a monitor or other display device. Because stand-alone graphics cards (hereafter, "discrete graphics cards") like the GTX 970 are specifically engineered to process graphics, they can render graphical output substantially faster than a computer's general-purpose central processing unit ("CPU") and random access memory ("RAM"). Thus, users can substantially increase system performance by offloading these tasks to a discrete graphics card, rather than processing graphics directly from their CPU and RAM. Additionally, modern graphics cards like the GTX 970 support a host of advanced graphical features that would not otherwise be feasible using the CPU and RAM alone.

3. Over the years, discrete graphics cards like the GTX 970 have evolved into miniature computers unto themselves. That is, the GTX 970 has its own casing, its own RAM, its own cooling system, its own processor, and its own dedicated power regulators:[1]

---

[1] *See* http://br.evga.com/products/enlarge.asp?pn=04G-P4-0974-KR&I=1.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



9    4.    Defendants falsely and misleadingly represented the technical specifications and

10   performance of the GTX 970 in its advertising and marketing materials.  Specifically, Defendants

11   represented that the GTX 970 had 2 MB (megabytes) of L2 cache, 64 parallel processing cores

12   called render output units ("ROPs"), and 4 GB (gigabytes) of video RAM ("VRAM")

13   (collectively, the "Misrepresentations").

14   5.    However, these specifications are false.  In fact, the GTX 970 has only 1.75 MB of

15   L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into

16   two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-

17   seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which

18   causes a bottleneck that reduces the GTX 970's performance.

19   6.    The GTX 970 thus cannot perform as advertised and is not sold as advertised.  By

20   selling the GTX 970 with false and misleading technical specifications, Defendants deceived

21   consumers into purchasing a graphics card that is worth substantially less than represented.

22   Plaintiff and class members did not receive the graphics card they were promised and expected.

23   Plaintiff and class members thus paid a premium for a product that does not perform as

24   advertised.

25                              **JURISDICTION AND VENUE**

26   7.    This Court has jurisdiction over the subject matter of this civil action pursuant to

27   28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.  This

28   Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  This

1   Court further has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C.

2   § 1332(d), because some members of the proposed Class are citizens of states different than

3   Defendants, and the aggregate in controversy exceeds $5,000,000, exclusive of interest and costs.

4           8.     The Court has personal jurisdiction over Defendants because Defendants are

5   headquartered and are authorized to do business and in fact do business in this state and

6   Defendants have significant minimum contacts within this state, and/or otherwise intentionally

7   avail themselves of the markets of this state through the promotion, marketing, and sale of their

8   products in this state, to render the exercise of jurisdiction by this Court permissible under the

9   traditional notions of fair play and substantial justice.

10           9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

11   do substantial business in this District, a substantial part of the events giving rise to Plaintiff's

12   claims occurred within this District (*e.g.*, the research, development, design, and marketing of the

13   GTX 970), and Defendant NVIDIA's principal place of business is in this District.

14   **PARTIES**

15           10.    Plaintiff Mark Roushion is a resident of Sonoma County, California.  On or about

16   September 22, 2014, Plaintiff Roushion purchased two EVGA-made GTX 970 graphics cards for

17   $349.99 each on the Newegg.com website, labeled "EVGA 04G-P4-0974-KR GeForce GTX 970

18   4GB 256-Bit GD".  Mr. Roushion decided to purchase the GTX 970 because he had a prior

19   version of a NVIDIA discrete graphics card and wanted to purchase a version which he believed

20   had more GB and thus more value for his money.  Prior to his purchase of the GTX 970,

21   Mr. Roushion was familiar with the card's purported technical specifications and performance

22   characteristics, which represented that the card had 2 MB of L2 cache and 64 ROPs.

23   Additionally, Mr. Roushion reviewed the product's labeling and information online prior to

24   purchase, which represented that the card had 4 GB of VRAM.  Mr. Roushion saw these

25   representations prior to and at the time of purchase, and understood them as representations and

26   warranties that the GTX 970 did, in fact, meet these specifications.  Accordingly, these

27   representations and warranties were part of the basis of the bargain, in that he attributed value to

28

CLASS ACTION COMPLAINT

these specifications and would not have purchased the GTX 970 or would have purchased the GTX 970 at a significantly lower price had he known that these specifications were false.

11.     Defendant NVIDIA Corporation is a Delaware corporation with its principal place of business at 2701 San Tomas Expressway, Santa Clara, California 95050.  Defendant NVIDIA researched, designed, and marketed the GTX 970 to consumers.  NVIDIA is a publically-traded company with a market capitalization of $12.44 billion and annual revenue of $4.68 billion.

12.     Defendant EVGA Corporation is a California corporation with its principal place of business at 2900 Saturn Street, Brea, California 92821.  Relevant to this action, EVGA manufactured the particular GTX 970 Mr. Roushion purchased.  Within the industry, it is customary for designers like NVIDIA to license their designs to major electronics manufacturers like EVGA, who in turn press, package, and sell NVIDIA's graphics cards.  However, each graphics card licensed to outside manufacturers must meet NVIDIA's specifications.  Accordingly, as is customary in the industry, there are EVGA-made GTX 970 cards, ASUS-made GTX 970 cards, Gigabyte-made GTX 970 cards, ZOTAC-made GTX 970 cards, and PNY-made GTX 970 cards, each with virtually identical specifications and performance.

13.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

**FACTUAL BACKGROUND**

**I.     The Role of Graphics Cards in Modern Computers**

14.     Modern computers are a collection of specialized components, each with a defined task.  A computer generally has the following components: a CPU that processes instructions, memory for storage (*e.g.*, RAM or a hard drive), input from the user (*e.g.*, a mouse or keyboard), output for the user (*e.g.*, a monitor or speakers), and a control unit that coordinates the various components (*i.e.*, the motherboard).

15.     Building off this framework, when images are rendered for output on a display device like a computer monitor, they are arranged in a series of tiny dots called pixels.  For

example, the popular resolution 1920x1080 is arranged as a grid of pixels that number 1,920 in width and 1,080 in height, for a total of slightly over 2 million pixels.  Each time the display changes – through moving a mouse, opening a program, watching a movie, playing a computer game, etc. – some or all of the pixels must be updated.

16.     Historically, graphics were rendered with a computer's main CPU and RAM.  However, the disadvantage to this methodology is that rendering graphics occupies these components, which are simultaneously executing the operating system and numerous programs.  Accordingly, commingling these tasks reduced the computer's performance system-wide, and the quality of graphics that can be displayed is fairly limited.

17.     In or about 1995, several companies (including NVIDIA) began marketing discrete graphics cards, which offload graphics rendering to a separate processor that is specifically engineered for this task.  NVIDIA's "NV1," released in 1995,[2] was the first commercial graphics card capable of 3D rendering and video acceleration.  Over time, graphics cards have evolved into miniature computers, with their own processor (a graphics processing unit, or "GPU"), RAM, cooling system, and sometimes separate power regulators.

18.     On modern computers, graphics cards are plugged directly into the motherboard.  Many graphics cards, including the GTX 970, allow users to use multiple cards at once for increased graphical performance.

19.     The advantage of using discrete graphics cards is that the computer's main CPU and RAM are not occupied with rendering graphics, thus improving system-wide performance.  Additionally, discrete graphics cards like the GTX 970 can render graphical output substantially faster than a computer's main CPU and RAM alone, given that they are specifically engineered for the task.  Furthermore, modern graphics cards support a host of other advanced graphical features that would not otherwise be possible using the CPU and RAM alone.  Essentially, games, animation, and 3D graphic applications run faster, and overall system performance is increased.

20.     While graphics cards are a booming industry, it is dominated as a duopoly by NVIDIA and its competitor Advanced Micro Devices, Inc. ("AMD").  As of the Third Quarter

[2] *See* http://www.nvidia.com/page/corporate_timeline.html.

2013, NVIDIA captured 64.5% of the market, while AMD captured 35.5%. These two companies' graphics processors are found in desktop computers, laptop computers, and even in console game systems.

**II.     Defendants Misrepresented the Specifications and Performance of the GTX 970**

21.     Defendant NVIDIA designed, developed, manufactured, marketed, and sold the GTX 970. Defendant EVGA incorporated the GTX 970 into the EVGA Graphics Card, and manufactured, marketed, and sold the GTX 970 to retailers and end users as well.[3] These devices first hit the United States consumer market in September 2014.

22.     In their sales and marketing, Defendants misrepresented the technical specifications and performance of the GTX 970. Specifically, Defendants falsely and misleadingly represented that the GTX 970 has 2 MB of L2 cache, 64 ROPs, and 4 GB of RAM. In actuality, the GTX 970 has 1.75 MB of L2 cache, 56 ROPs, and 3.5 GB of RAM, with a separate pool of 0.5 GB RAM that operates at one-seventh the speed of the main pool, bottlenecking the card.

23.     L2 cache is a form of extremely high-speed memory, typically located on a processor itself (as opposed to a block of RAM). Processors will attempt to pull data from the L2 cache first, and will only access the RAM if the required data is unavailable in the L2 cache. Thus, the size of L2 cache is directly correlated with performance. The larger the L2 cache is, the faster a processor can access data.

24.     ROPs, also known as "raster operations pipelines," are parallel processing cores that assist in rendering pixels. The "fillrate," or the maximum number of pixels that can be filled per second by the graphics card, is calculated by multiplying the number of ROPs by the clock frequency of the GPU. A smaller number of ROPs on a graphics card means that the card can generate fewer pixels per second.

25.     Prior to the sale of the GTX 970, Defendants distributed advance copies of the graphics card to reviewers and trade publications, as is customary in the industry. Accompanying

---

[3] *See* http://www.evga.com/Products/ProductList.aspx?type=0&family=GeForce+900+Series+Family&chipset=GTX+970

1   the sample graphics card was a "GTX 970 Reviewer's Guide," which misleadingly states that the

2   GTX 970 has a 2 MB L2 cache (*i.e.*, 2,048 kilobytes of L2 cache) and 64 ROPs.[4]  In turn, these

3   precise specifications were widely reported in the press.

4       26.   Furthermore, NVIDIA's website represents that the GTX 970 has "4 GB" of

5   RAM, which has a maximum "Memory Bandwidth" of "224 (GB/sec):"[5]



11      27.   Similarly, the GTX 970 is prominently advertised on Amazon and Newegg as

12  having 4 GB of RAM.  Specifically, Amazon boasts that the GTX 970 has: "Gigantic 4GB 7010

13  MHz GDDR5 memory."[6]  Defendant Newegg lists the GTX 970 as having a "Memory Size" of

14  "4GB" and incorporates the purported "4 GB" of RAM into the very name of the product.[7]

15      28.   The label and packaging of the GTX 970 also prominently states that the product

16  has "4 GB" of memory, in the form of high-speed GDDR5 RAM:

---

[4] *See* http://www.anandtech.com/show/8935/geforce-gtx-970-correcting-the-specs-exploring-memory-allocation.

[5] *See* http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications.

[6] *See* http://www.amazon.com/ASUS-STRIX-GTX970-DC20C-4GD5-Graphics-Cards/dp/B00NJ9BJ8G.

[7] *See* http://www.newegg.com/Product/Product.aspx?Item=N82E16814487066.

29.     Each of these representations is false and misleading.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

30.     These facts came to light on or around January 24, 2015, when the computing website AnandTech published an article entitled "NVIDIA Publishes Statement on GeForce GTX 970 Memory Allocation," concerning problems with the GTX 970's memory:

> [V]arious GTX 970 owners had observed that the GTX 970 was prone to topping out its reported VRAM allocation at 3.5GB rather than 4GB, and that meanwhile the [more expensive] GTX 980 was reaching 4GB allocated in similar circumstances.  This unusual outcome was at odds with what we know about the cards and the underlying GM204 GPU, as NVIDIA's specifications state that the GTX 980 and GTX 970 have identical memory configurations: 4GB of 7GHz GDDR5 on a 256-bit bus, split amongst 4 ROP/memory controller partitions.  In other words, there was no known reason that the GTX 970 and GTX 980 should be behaving differently when it comes to memory allocation.

> Since then there has been some further investigation into the matter using various tools written in CUDA in order to try to systematically confirm this phenomena and to pinpoint what is going on.  Those tests seemingly confirm the issue – the GTX 970 has something unusual going on after 3.5GB VRAM allocation….

> Despite the outward appearance of identical memory subsystems, there is an important difference here that makes a 512MB partition of VRAM less performant or otherwise decoupled from the other 3.5GB.[8]

31.     Side-by-side benchmarks confirm that the 3.5 GB pool of RAM operates at 192 GB per second, while the 0.5 GB pool only operates at 28 GB per second.[9]  Stated otherwise, the 0.5 GB pool is almost seven times slower than the 3.5 GB pool.

32.     Later stories also found that NVIDIA's specifications concerning the size of the L2 cache and the number of ROPs on the GTX 970 were similarly incorrect.  Indeed, the Company was forced to admit that the specifications for the GTX 970 were incorrect.  The

---

[8] *See* http://www.anandtech.com/show/8931/nvidia-publishes-statement-on-geforce-gtx-970-memory-allocation.

[9] *See* http://pcper.freetrialoffer.us/reviews/Graphics-Cards/NVIDIA-Discloses-Full-Memory-Structure-and-Limitations-GTX-970.

website Gamespot reported on January 27, 2015 in an article entitled "Nvidia Admits to Error in GTX 970 Specs and Memory Performance Problems":

> [T]he company has revealed that the published specifications for the GTX 970 were partially incorrect, with the GPU actually sporting fewer ROPs and L2 cache than consumers and reviewers were initially led to believe.
>
> Nvidia's Senior VP of GPU Engineering Jonah Alben spoke to PC Perspective about the issue, with the publication noting that "despite initial reviews and information from NVIDIA, the GTX 970 actually has fewer ROPs and less L2 cache than the GTX 980. NVIDIA says this was an error in the reviewer's guide and a misunderstanding between the engineering team and the technical PR team on how the architecture itself functioned. That means the GTX 970 has 56 ROPs and 1792 KB of L2 cache compared to 64 ROPs and 2048 KB of L2 cache for the GTX 980."[10]

33. Moreover, nowhere in Defendants' materials do Defendants disclose that the GTX 970 actually has a separate pool of RAM that runs at one-seventh the speed of the main pool. Instead, consumers are led to believe that the product has a single pool of 4 GB RAM with a maximum memory bandwidth of 224 GB/sec – which is only possible to achieve when the slower pool of 0.5 GB is in use, thereby bottlenecking the rest of the card. Consumers are also led to incorrectly believe that the GTX 970 has 2 MB of L2 cache and 64 ROPs.

34. On or about February 24, 2015, NVIDIA's President and Chief Executive Officer Jen-Hsun Huang responded to concerns about the GTX 970, stating that "[w]e won't let this happen again. We'll do a better job next time."[11] However, the GTX 970 continues to be advertised with the incorrect specifications.[12]

35. As the designers and manufacturers of the GTX 970, Defendants are in a unique position to know the exact specifications of their own product. Industry-leading designers and manufacturers of graphics cards, like Defendants, do not unwittingly mislabel the specifications of their own products.

---

[10] *See* http://www.gamespot.com/articles/nvidia-admits-to-error-in-gtx-970-specs-and-memory/1100-6424915/.

[11] *See* http://blogs.nvidia.com/blog/2015/02/24/gtx-970/.

[12] *See, e.g.*, http://www.evga.com/products/Specs/GPU.aspx?pn=59af1a79-f7d6-40fc-8325-79d75120cf69.

36.     The product is subject to a 3-year parts and labor limited warranty by NVIDIA and EVGA.[13]  EVGA provides that "EVGA will provide a warranty to each retail product and that the product will not suffer, in material or workmanship, from any defect that adversely affects the performance of the product."[14]   NVIDIA provides that its warranty will cover "[a]ny manufacturing defects or hardware component failures in your NVIDIA® Product that is still within warranty along with any accessories you received."[15]

## CLASS ALLEGATIONS

37.     Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a class defined as all persons in the United States who purchased a NVIDIA GeForce GTX 970 graphics card (the "Class").

38.     Plaintiff further proposes the following subclass defined as all persons in the United States who purchased a GTX 970 graphics card manufactured by EVGA (the "Subclass").

39.     Upon completion of discovery with respect to the scope of the Class and Subclass, Plaintiff reserves the right to amend the Class and Subclass definitions.  Excluded from the Class and Subclass are Defendants and any entity in which any Defendant has a controlling interest, and their legal representatives, officers, directors, assignees, and successors, and members of their immediate families.  Also excluded from the Class are persons who made such purchase for purpose of resale, any judge to whom this action is assigned, and the spouse of any such persons.

40.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  The precise number of Class and Subclass members and their identities are unknown to Plaintiff at this time but given the nationwide scope of Defendants' business, it is clear that the number greatly exceeds the number to make joinder impossible.

41.     Common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

---

[13] *See* http://www.newegg.com/Product/Product.aspx?Item=N82E16814487066.

[14] *See* http://www.evga.com/support/warranty/.

[15] *See* http://www.nvidia.com/object/manufacturer_warranty.html.

1          a.       Whether Defendants made inaccurate and deceptive claims about the

2    amount of cache in the GTX 970;

3          b.       Whether Defendants made inaccurate and deceptive claims about the

4    amount of ROPs in the GTX 970;

5          c.       Whether Defendants made inaccurate and deceptive claims about the

6    amount of RAM in the GTX 970;

7          d.       Whether Defendants unfairly concealed these material facts from

8    consumers;

9          e.       Whether Defendants warranted that the GTX 970 has 2 MB of L2 cache;

10         f.       Whether Defendants warranted that the GTX 970 has 64 ROPs;

11         g.       Whether Defendants warranted that the GTX 970 has 4 GB of VRAM;

12         h.       Whether Defendants breached these warranties;

13         i.       Whether Defendants violated applicable consumer protection statutes;

14         j.       Whether Defendants were unjustly enriched at the expense of Plaintiff and

15    the Class;

16         k.       Whether Plaintiff and the Class were harmed, and, if so, what relief they

17    are entitled.

18         42.      Defendants engaged in a common course of conduct giving rise to the legal rights

19    sought to be enforced by the Class members.  Similar or identical statutory and common law

20    violations and deceptive business practices are involved.  Individual questions, if any, pale by

21    comparison to the numerous common questions that predominate.

22         43.      The claims of Plaintiff are typical of the claims of the Class and Subclass in that

23    Plaintiff purchased a GTX 970 in reliance on the representations and warranties described above,

24    and suffered a loss as a result of that purchase.  Plaintiff and the Class and Subclass would not

25    have purchased in the absence of Defendants' deceptive scheme.

26         44.      Plaintiff is an adequate representative of the Class and Subclass because his

27    interests do not conflict with the interests of the Class members he seeks to represent.  Plaintiff is

28    familiar with the basic facts that form the basis of the Class members' claims.  Plaintiff has

retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

45.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Even if the Class members themselves could afford individual litigation, the court system could not.

46.     Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**FIRST CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.*)**

47.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

48.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

49.     The GTX 970 is a consumer product as defined in 15 U.S.C. § 2301(1).

50.     Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

51.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

52.     In connection with the sale of the GTX 970, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.

53.     The GTX 970 does not conform to the express warranties because each of the express warranties is false and misleading.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

54.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., thereby damaging Plaintiff and the Class and Subclass members.

55.     Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

**SECOND CAUSE OF ACTION**
**(Breach of Express Warranty)**

56.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

58.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.

59.     In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

60.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

### THIRD CAUSE OF ACTION
#### (Breach of Implied Warranty of Merchantability)

61.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

63.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

64.     Defendants breached the warranty implied in the contract for the sale of the GTX 970 because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2).  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

65.     Plaintiff and Class members purchased the GTX 970 in reliance upon Defendants' skill and judgment in properly packaging and labeling the GTX 970.

66.     The GTX 970 was not altered by Plaintiff or Class members.

67.     The GTX 970 was defective when it left the exclusive control of Defendants.

68.     Defendants knew that the GTX 970 would be purchased and used without additional testing by Plaintiff and Class members.

69.     The GTX 970 was defectively designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

70.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

71.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

72.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

73.     Plaintiff and Class members conferred benefits on Defendants by purchasing the GTX 970.

74.     Defendants' misconduct induced Plaintiff and members of the Class and Subclass to purchase the GTX 970.  Plaintiff and the Class and the Subclass purchased the GTX 970 that they would not have otherwise purchased, or paid more than they otherwise would have paid for such product, absent such misconduct.

75.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the GTX 970.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

76.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

### FIFTH CAUSE OF ACTION
### (Violation of the California Unfair Competition Law, California Bus. & Prof. Code §§ 17200, *et seq.*)

77.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

79.     The acts, practices, misrepresentations and omission by Defendants described above constitute unfair, unlawful, deceptive, untrue and/or misleading business acts and practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

80.     Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the Magnuson-Moss Warranty Act, the California Consumer Legal Remedies Act, and the California False Advertising Act, as described herein.

81.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

82.     Defendants' misrepresentations and other conduct, described herein, violated the "deceptive" prong of the UCL because they are likely to deceive consumers, including Plaintiff and members of the Class, targeted with such statements and omissions of material fact.

83.     Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

84.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself and the other Class members, seek restitution of any monies wrongfully acquired or retained by

Defendants and by means of their unfair and unlawful practices, an injunction prohibiting Defendants from engaging in the same or similar unfair business practices in the future and such other and further relief as set forth in Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### SIXTH CAUSE OF ACTION
**(Violation of the California Consumers Legal Remedies Act,
Cal. Civ. Code §§ 1750, *et. seq.*)**

85.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

86.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

87.     The product as described above were bought by Plaintiff, and other consumers similarly situated, primarily for personal, family or household purposes.

88.     Prior to Plaintiff's purchases of the above-mentioned product, Defendants violated Cal. Civ. Code § 1770 in the following respects:

a.     In violation of California Civil Code § 1770(a)(5), Defendants represented in marketing materials and product manuals that the GTX 970 had characteristics which they did not have, namely, that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

b.     In violation of California Civil Code § 1770(a)(7), Defendants represented that the GTX 970 was of a particular standard, namely, that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM, when in fact they were not; and

c.     In violation of California Civil Code § 1770(a)(9), Defendants advertised the GTX 970 as providing 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM, with the intent not to sell the GTX 970 as advertised; and

89.     The above-mentioned misrepresentations resulted in the sale of the GTX 970 to Plaintiff and to other consumers similarly situated.

90. Under the CLRA, a plaintiff may without prior notification file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the defendant does not remedy the CLRA violations within 30 days of notification, the plaintiff may amend his CLRA cause of action without leave of court to add claims for damages. At this time, Plaintiff does not seek to recover damages for himself or the Class under the CLRA, only injunctive relief.

91. Pursuant to Cal. Civ. Code § 1780, Plaintiff, on behalf of himself, the other Class members, and the general public, seek an order of this Court enjoining the Defendants from continuing the methods, acts and practices set out above regarding their misrepresentations regarding the GTX 970.

**SEVENTH CAUSE OF ACTION**
**(Violation of the California False Advertising Act,**
**California Bus. & Prof. Code §§ 17500, *et seq.*)**

92. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

93. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money and/or property as a result of Defendants' actions.

94. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

95. Defendants engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the GTX 970 to consumers. Such advertisements originated in California and were disseminated nationwide.

96. Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, represented that the GTX 970 had 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM. In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs. Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

97.     Defendants' advertising and marketing representations were false, misleading, and deceptive as set forth above.  Defendants also concealed material information from consumers about the true capabilities of the GTX 970.

98.     Defendants' material misrepresentations and omissions deceived or have the tendency or likelihood to deceive the general public regarding the benefits of purchasing the GTX 970.

99.     At the time they made the misrepresentations and omissions of material fact as alleged herein, Defendants reasonably should have known that they were untrue or misleading, in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

100.    As a result, Plaintiff and the Class seek disgorgement, restitution, injunctive relief, and other relief as permitted under Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**EIGHTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

101.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

103.    As discussed above, Defendants misrepresented that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool, which causes a bottleneck that reduces the GTX 970's performance.

104.    At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

105.    Defendants negligently misrepresented and/or negligently omitted material facts about the GTX 970.

106. The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the GTX 970.

107. Plaintiff and Class members would not have purchased the GTX 970 if the true facts had been known.

108. The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of himself and all others similarly situated, asks the Court to enter the following judgment:

A. For an order certifying a nationwide Class and a Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B. For an order declaring the Defendants' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

D. For compensatory and punitive damages;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded;

H. For an order awarding Plaintiff and the Class and Subclass his reasonable attorneys' fees and expenses and costs of suit; and

I. All other relief that the Court deems necessary, just and proper.

/ / /

/ / /

/ / /

/ / /

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 9, 2015                Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:     /s/ *Laurence D. King*
              Laurence D. King

Laurence D. King (SBN 206423)
Linda Fong (SBN 124232)
Mario Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be filed)
David A. Straite (*pro hac vice* to be filed)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**WITES & KAPETAN, P.A**.
Marc A. Wites (*pro hac vice* to be filed)
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0206

*Attorneys for Plaintiff Mark Roushion*

CLASS ACTION COMPLAINT